ALBERT A. FEINBERG v. G. HOWARD SPAETH.[1]

March 5, 1943.

No. 33,347.

[1]Reported in 8 N. W. (2d) 240.

*Louis Sachs,* for relator.

*J. A. A. Burnquist,* Attorney General, and *P. F. Sherman,* Assistant Attorney General, for respondent.

JULIUS J. OLSON, JUSTICE.

*Certiorari* to review an order of the board of tax appeals affirming the tax commissioner's assessment of what he concluded to be taxable gains on the sale by relator of certain corporate stock.

In 1925 relator acquired a one-sixth stock interest in a domestic corporation for which he paid $5,000 in cash. This interest was later exchanged for the same *pro rata* stock holdings in other subsequently formed corporations. In 1930 a Delaware corporation was formed which "took over all assets" of a domestic corporation into which relator's investments theretofore had gone. Through corporate earnings, the "book value" of his interest in the corporation so taken over had increased from the $5,000 originally invested to $16,000. His stock interest in the new (Delaware) enterprise was the same as that which he had held in the predecessor company, *i. e.,* one-sixth.

But financial disaster soon overtook the new enterprise, and on April 16, 1932, relator and another were appointed receivers of it. Its corporate assets were sold February 18, 1933, to one Harry E. Kopald for $9,000. The sale was confirmed two days later. Prior to the sale, however, "during the fall of 1932," relator and his brother, also interested in the defunct corporation, had "entered into negotiations" with Kopald and his brother "looking to an arrangement under which the Kopalds would furnish the necessary capital to acquire the assets" of the defunct corporation. The "understanding" was that relator and his brother were to "continue active" in the corporation so to be formed and "would receive certain stock in the new corporation." The new corporation "was organized March 17, 1933," by the Kopalds, neither of whom had "been stockholders in, creditors of, or in any way interested"

in the defunct corporation. Upon the recited facts, the board of tax appeals concluded:

"That the organization of said [new] corporation in 1933 did not constitute a reorganization within the purport of Section 17(a)-(3), Minnesota Income and Franchise Tax Act of 1933 as amended, and stock received by Taxpayer in said corporation was not received in exchange for stock, or in any way in pursuance of a plan of reorganization within the statutory intendment of Section 17(a)-(3) Supra.

"9. That the Taxpayer acquired his stock in the [new] U. S. Air Conditioning Corporation subsequent to its organization March 17, 1933, and not prior to January 1, 1933, and that its cost is therefore determinable under Section 18, Minnesota Income and Franchise Tax Act of 1933 as amended."

The main item in controversy relates to the $16,000 which relator claims he invested in acquiring stock in predecessor corporations prior to the one organized in 1933. To that issue we therefore direct our attention.

Relator's contentions are: (1) That the stock acquired by him in the 1933 corporation was acquired "through a plain of reorganization" and hence that § 17(a)(3) permits him to include that sum as a part of the cost of the stock in the new one; and (2) that in selecting the basis for determining gain or loss he can proceed under § 19, using the alternative basis of fair market value or cost.

The statutory provision to which we are referred is L. 1933, c. 405, § 17(a)(3), as amended by Ex. Sess. L. 1937, c. 49, § 12. As Minn. St. 1941, § 290.13, subd. 1(3),[2] it reads:

"No gain or loss from the following transactions shall be recognized at the time of their occurrence, except as otherwise specified in this section:

\* \* \* \* \*

---

[2]This provision appears in Mason St. 1940 Supp. as § 2394-17(a)(3).

"(3) If stock or securities in a corporation a *party to a reorganization are, in pursuance of the plan of reorganization,* exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization;" (Italics supplied.)

In interpreting § 290.13, subd. 1(3), reference must further be made to subd. 6 thereof, which reads:

"As used in this section and section 290.14—

"(1) The term 'reorganization' means:

"(a) A statutory merger or consolidation; or

"(b) The acquisition by one corporation, in exchange solely for all or a part of its voting stock; of at least 80 per cent of the voting stock and at least 80 per cent of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation; or

"(c) A transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders, or both, are in control of the corporation to which the assets are transferred; or

"(d) A recapitalization; or

"(e) A mere change in identity, form, or place of organization, however effected.

"(2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another."

Relator was a stockholder and officer in the defunct corporation. The purchasers at the judicial sale had no interest in it. To all outward appearances, at least, the assets of the old enterprise were sold pursuant to public notice given to all alike. In that situation, there was not, nor could there be, "continuity of interest" between the defunct corporation and the new one organized by the Kopalds long after the sale. Even if relator may have had such a notion in his mind when dealing with the Kopalds, the fact re-

mains that any such intention was never made known to other stockholders or creditors. To all of them relator owed a fiduciary duty. In that capacity, he could not have become a purchaser at such a sale. No arrangements or agreements with or among the corporate creditors or other parties in interest were ever made. Such a secret purpose and plan as that now sought to be brought to fruition cannot be tolerated. That relator recognized the impropriety of such behavior is disclosed by his own testimony when he said:

"There was some concern on my part with regard to entering into the buying of the assets of a company of which I was receiver. *I didn't want the records to indicate that I was in the deal.*"

As coreceiver he reported the sale to the court as one conducted openly and fairly; that the receivers had tried to get better offers than the $9,000 offered by the Kopalds, but that this was the best offer that could be obtained. Of the $9,000 paid for these assets, $4,000 thereof went to pay expenses of the receivership proceedings and the balance for the payment of a chattel mortgage upon the corporate assets. As a result, the general creditors of the old corporation got nothing. And the same is true with respect to its other stockholders. Charity forbids the thought that the qualms which relator had .as receiver against doing anything which the record would "indicate" he "was in the deal" should be less potent now when the state seeks to enforce a tax burden shared by those who have honestly and openly disclosed their income and paid their full share. He made a very substantial profit on his sale of the stock acquired in the new enterprise. He should not now be heard to say that, as to his interest in the new enterprise, there was either a "reorganization" or a "plan of reorganization" within either the language or the obvious purpose of our statutes.

Writ discharged and order affirmed.

PETERSON, JUSTICE (concurring specially).

I concur in the result upon the merits for the reason, as the

majority opinion shows, that the taxpayer's interest in the new corporation was neither a "reorganization" nor a "plan of reorganization" within the meaning of the statute. I think that our decision should be not that wrongdoing on the part of the taxpayer prevents consideration of his defense to the tax, but that the defense asserted lacks merit.

YOUNGDAHL, JUSTICE (concurring specially).

I concur in the special concurrence.

